Next case we have on our calendar is Munoz versus United States Department of State. And Mr. Lee, you can begin whenever you're ready. And again, just watch the clock if you want to save time for rebuttal. May it please the court. Good morning, Your Honors. Eric Lee for the point of appellants. I will try and save about five minutes. I'll keep my eye on the clock. Your Honors, the State Department denied Luis Asensio Cordero admission to the United States, alleging that he is a member of the gang MS-13. He's not a member of MS-13 or a member of any other gang. The State Department's position is that this court has to accept its allegation, even in the absence of any evidentiary fact to support it. We believe this position is incorrect and should be rejected because under Mandel and under Dinh and under Cardenas, an accusation alone under this section of the statute is insufficient because the government has to point to a fact on the record to support its allegation. All the factual evidence that's on the record in this case points to the fact that my client is not a gang member. He is a 45-year-old man who has no criminal record beyond traffic violations. He's been married to a prominent civil rights attorney in the United States, Sandra Munoz, for 10 years. He has tattoos that have Catholic imagery because he's a religious man, but the magistrate judge correctly ruled that the tattoos are not representative of MS-13 or of any other gang. That's on the record at page 185. So the State Department has not provided any fact showing my client has ever had any association with gang members. The State Department has not provided any indication that my client ever took any action that provided the consular officer with a reason to believe he is what they allege he is. And again, he is not a gang member. He has never been. So for this reason, the State Department has not met its burden of showing that the inadmissibility finding was facially legitimate and bona fide. And so we would respectfully request that this court remand the case to the district court to give the State Department another opportunity to show that there is some factual basis upon which the consular officer reached his or her conclusion that my client is a member of MS-13. So suppose the Department of State talked to some law enforcement officials and they said confidentially to the State Department, well we have some informants in MS-13 and one of them says Mr. Cordero is a member. And who knows if the informant is accurate or not, but that's information they got. And obviously the government doesn't want to disclose that they have an informant in MS-13. So instead they provide a vague statement such as criminal review of Mr. Cordero's history. If that's what happened, why isn't that enough? I mean, I don't think we can require the government to provide details, especially if it's perhaps very sensitive or confidential. So two points in response to your Honor's question. Number one, the magistrate judge ruled that there was no law enforcement privilege that applied. But number two, and more importantly, the answer is incardinous. And incardinous, the Ninth Circuit made very clear that the basis of its ruling, the basis of its understanding of the reason to believe that the petitioner there, a man named Mr. Mora, was a member of the dangerous gang, the Sereños, was that he had been arrested on June 16, 2008, with a known Sereño member in the car with him. And so if this court looks very closely at the basis for the court's decision there, which was correctly ruled, the individual was headed to another known gang member's house. He had an S for Sereño burned in his hand. But I don't think we set that high bar for every single case. I mean, there, the evidence was very clear, he was arrested. But again, in a situation like this, if perhaps the government is relying on some more confidential information, I mean, I don't think we can require the executive branch to disclose all the details. Seems like our hands are a bit tied in reviewing this, in this area. Not according to... Because the criminal case could be completely different. But in this context, it seems like we're, you know, we're very limited review here. Well, again, the magistrate did rule that there was, that the State Department's request for law enforcement privilege, number one, was woefully inadequate, in her words. But the fact is that, according to Cardenas, and according to Mandel, there needs to be a factual basis for the conclusion that the State Department reaches when they deny visas. So that's also... They say there was a factual basis. We interviewed the individual. We have reports from law enforcement authority, unspecified, they don't go beyond just referring to that, and the tattoos. So they have said, it came after a very long time, it took three years to get there. But eventually, you found out what the factual basis is, and you would like to explore that in much greater detail. But you can't do that, can you? Unless there's been a finding of bad faith in asserting this factual predicate for the decision that was made. I don't know how you can get beyond this consular unreviewability, unless there was a finding of bad faith, and the district court said, there's no bad faith here. So you can't get the kind of review on this record that you're arguing for, can you? So, Your Honor, we're not actually asking that this court engage in fact-finding. The test which was laid out in Mandel first, where there was a that in that case, Mandel had violated previous visas, that was the factual connection. And so here, it doesn't require a re-litigation in that sense of what the consular officer may or may not have been thinking. All that is required, and I would agree that it's not a very strenuous test, and yet it's one that the State Department hasn't satisfied here, which is in Cardenas, there was proof that he, or there was a fact showing that the petitioner was an associate of gang members. Now, here, there is no proof that he's ever had any association with a gang member. There's no proof that he ever took any action. Now, for example, one cannot platonically belong to a gang. Joining MS-13 actually requires an act. It requires conduct. And so the test that this court- that if, that the government has to, it's the government's burden to prove something if you show that, have evidence that it was wrong, that the decision, that the reason it made was wrong. But we, that seems to indicate that applicants for visas can come into court anytime they disagree with the basis for the denial. And I don't, I don't think that is the law, that is what the unreviewability principle is there for. Right, and I understand that your Honor's concerned there. The point isn't that we believe that we disagree with the conclusion and therefore we prevail. The point is that there is no fact on the record. There's nothing with which we can agree or disagree. So we're not asking this court to set some standard that throws the door open and allows anybody to challenge, say, oh, I disagree. I'm not a terrorist or whatever. We're at, we're arguing that there's a test, that the facially legitimate and bonafide test obligates the State Department to put a fact forward. And in Cardenas, it was the Gang Association. I would point this court's attention as well. I mean, Judge Lee pointed out that, yeah, those were the facts in Cardenas, but there was no suggestion there that there always had to be such facts. I mean, here there's less, but I think it's the government's position that it's still, it's still enough. And you, you want to establish a rule that just saying that we have a the conclusion that he's a member of MS-13, that's not enough. The fact would be, let's see the report. Let's see who said it. Let's see what he said. That that's what you really are. That, until you get to that level of specificity, there really is not a fact, the kind of fact that Din requires. Is that your position? Well, not exactly. And let me try and clarify, because again, if one looks to Cardenas, in that case, there was a law enforcement conclusion and there were also tattoos. And yet the Ninth Circuit very deliberately did not make either of those the basis of the denial. I don't want to sound repetitive. There was a fact he was arrested with a known Serenio member. Now I do see I'm getting close to where I would like my time to be for rebuttal, but I would just point this court's attention briefly to Judge Easterbrook and Judge Wood's decision in Morphin, where they made, and I hope this clarifies the question, they said that it was a case of trafficking of controlled substances was the inadmissibility finding. And the court required, they said there was an indictment which showed that the person in question had been indicted for possession and distribution of cocaine. And they wrote as follows, an indictment provides a reason to believe that its accusation is true. And they made that an accusation and a factual basis. The statute says reason to believe. It doesn't say belief. It says there must be a reason to believe. And that's the narrow rule that we would like this court to uphold from its decisions in Cardenas. So with that, I'll reserve the balance if I may. Actually, I do have one question here, and maybe you could help me. I'm trying to understand the import of this statutory provision. It's 1182B3. I think it's briefly mentioned by Justice Kennedy and his concurrence in Dinn, but it doesn't really tease out to the ultimate conclusion. 1182B3 is about the notice of denial requiring a notice stating the termination and the specific provisions of law under which the alien is inadmissible. But then B3 says that provision about notice does not apply to any alien inadmissible under paragraph two or three of subsection A, which is what applies here. So does that mean the government doesn't have to provide any notice at all whatsoever? It seems like the language suggests that, but I know Justice Kennedy's concurrency doesn't really state that. It kind of dances around it. So I'm just trying to understand what that provision means. And if you haven't had a chance to look at it, you can do it and rebuttal that. That's fine too. Maybe I can try and just be brief and then have a bit of time to rebut. If I understand Your Honor's question, what facts need to be provided initially may have more to do with the question of bad faith. We don't think we need to show bad faith to prevail. We think we can, but we don't think we need to. But if I understand it correctly, in Kennedy's concurrence, he very explicitly makes the point that the terrorism bar in question B3, which Your Honor was mentioning, it says that Justice Kennedy said, unlike the waiver provision at issue in Mandel, there were discreet factual predicates contained in that terrorism section. So that's why in Din, there doesn't need to be an additional fact on the record, but why there does here. I hope that that gets at your question. And that's, I guess, the tension in the concurring opinion because it says that, but then it also briefly mentions this provision, which basically seems to flatly say that notice isn't required at all, possibly. I mean, I'm not sure. That's one of the tensions within the concurrence, which I don't fully understand. So maybe I'll ask the government's attorney to see if they have a position on that. But again, you can take a look at it and have rebuttal. Thank you, Mr. Press. Good morning, Your Honors. Joshua Press here on behalf of the defendants. Picking up, Judge Lee, with where you were leading off, the government's position is still today that notice is not required at all as a matter of constitutional law. The reason why I'm saying that, I know that that sounds like a very extreme position, but the reason why I'm saying that is because that is confirmed by United States ex-rel Mazzei and Knaufi Shaughnessy from the 1950s. To give you an example of how extreme that goes, Mazzei was a lawful permanent resident. He had a green card. He left the United States to go visit, I believe, his dying mother in the Eastern Bloc country. He came back a while later. It was basically too long of a time later so that he was trying to return. He got stuck at Ellis Island and we excluded him based on confidential information that we did never disclose to him. So we never provided him notice to why we thought he was involved with the Soviets, essentially. And that was held to be fine for due process. Knaufi is very similar. These cases were cited as recently as two years ago by the Supreme Court in DHS versus Thurasigium. When it comes to the level of due process that's required, if a foreign national is knocking at our door, or here, he's not even at our door, he's farther away. He's in San Salvador at the time that he is applying for a visa. I know that that sounds very extreme. Obviously, we don't need to get into that level of granularity, but the point of that background helps explain why Congress has explicitly written into 8 U.S.C. 1182b3 why the notice and the facts, especially the facts, are not required to be provided to the visa applicant because of precisely these concerns. If you actually look at the statute that we are dealing with here, the core of the statute, and as was explicitly argued ad nauseum, I think, by the Plaintiffs' Council in Cardenas, is about espionage. It's about a concern with either corporate espionage or actual espionage or foreign agents coming into the United States. The provision that we are talking about and that's most applicable here is the any other unlawful activity prong, which is, I think, Romanet 2. Now, for the purposes of our case, I do want to assure the panel that transnational organized crime have always been, since 1965, have been thought of as captured within this very specific subsection. Obviously, the panel in Cardenas read the statute, interpreted its plain language, and said, yes, organized crime does fall into that category. But the legislative history and the congressional motivation at the time in the 1950s, and we are dealing with the Immigration and Nationality Act 1952, was obviously more heightened in concern and attuned to the potential for Soviet spies or their allies coming into the United States. The reason why I'm bringing all of that up is, as Mr. Lee's argument, I think, made it pretty clear, what they actually care about the most is getting to the facts. What facts do you have against my client? And that's actually what we care about the most, too, because for all of these cases, if we have information from one of our allies, about someone being a spy or a potential foreign agent, we absolutely will fight tooth and nail to never provide, especially that applicant or someone who we believe to be a spy, with how we got that information that would undermine... Counselor, can I ask... Excuse me, Counselor, I want to understand exactly what you're arguing here. After about three years, in the context of litigation, you disclosed for the first time, in disclosures to the court, that the reason for the denial here involved the... Basically, because of the conclusion that the petitioner is a member of MS-13. I mean, that came out after three years, in the form of... Basically, we reached that conclusion because of the interview, because we had a report from law enforcement, because of the tattoos. Is it your position that although you gave that information to the court in the context of litigation, you were not required to do that at all, at any time? Is that your position? No, please. That's my question. Sorry. Is that your position? I take your Honor's point that that does sound fairly extreme. I do want to point out the McNeil Declaration, which essentially says precisely the same thing that Your Honor said. I think that was filed in 2017 or 2018. It wasn't after three years. But regardless, I take your Honor's point that... It's pretty close to three years. Go ahead. Well, I understand. I think I'm just... Frame of reference wise, I'm talking about... I guess, in my mind, I have cases going back to the 1890s. So, the point that we're making here is that we never have to disclose the factual underpinning for why we come to a conclusion. And the reason why I say that is because we fought tooth and nail and went up from Judge McNeil's decision in Den v. Kerry to the Supreme Court about that precise point. If you look at Den, and this is actually illustrative of the point that I'm trying to make. If you look at Den, the State Department, the United States government never provided any information that it had regarding the visa applicant in that case. None at all. All of the facts that were discussed by the court were based on what was in the complaint about, we think it might be that the husband was associated with the Taliban and worked for the Taliban for a period of time. We never confirmed or denied as is our want in that case about any of that. We simply cited to the terrorism-related grounds, coincidentally, right next to the ground for denial in this or the subsection for denial in this case, and said, that is enough. Actually, what's ironic is that in that case, the argument was not what's going on here, this ground is too vague. The argument was this ground has too many subsections. Justice Breyer was talking about at length that there are four pages of subsections, that the applicant is left to guess what is the real problem with his background. And regardless of what Mr. Lee says, if you look at- Counsel, excuse me, I'm not finding this very helpful. Let me ask you, what is the relevance of the foreign affairs manual to the way in which the consular officials are supposed to handle these matters? I mean, the party cited right and left, so I gather it's a fair part of the record in this case. It seems to me that under that manual, there is special attention is paid to a conclusion that a visa should not be issued because somebody is a member of MS-13. Under those regulations, there's an automatic review, as I read the regulation, there's an automatic review of that determination. And the visa applicant is given an opportunity by providing additional evidence. It's got to be clear, it's got to be convincing to overturn that. My point is that the manual itself seems to contemplate that at the least, at the time of the visa denial, the applicant will be told that we've denied this because we think you're a member of MS-13. I mean, that seems to be the whole premise of the foreign affairs manual. And that you're suggesting that doesn't have to be done at all at any time. Is that correct? No, I'm not suggesting that. I apologize for giving you that misimpression. What I'm saying, according to the foreign affairs manual, and for the purposes of, well, for the purposes of the foreign affairs manual, that is correct. The applicant needs to be told this is the subsection. He was told, and I don't think there's really been an ever added allegation from plaintiffs in this case, but he was not told this was the subsection that was relevant to him. Now, I will say that he was not told we think you're a member of MS-13. He did come forward prior to bringing the complaint with information about how he was not a member of MS-13. And ignore these tattoos. It's just, it just shows how religious I am. That was not enough to disabuse the consular officer from his decision. The point of the statute, however, is it only requires a reasonable belief or a reason to know. And we I'm not trying to really quibble with your honor's question, but I think that the factual record shows that everything within the fam was actually complied with here because we did undertake a review of his tattoos. We didn't want to tell him specifically, we think you're a member of MS-13 because we, let's just say, hypothetically, we had information where I take of your initiation ceremony. We think that would be sort of weird. I'm not saying that we do have that sort of information or that was provided to us because I do want to keep that pretty vague. But the point I'm trying to make is we do not have to give that information that is explicitly confirmed by Justice Kennedy's concurrence in Din. It's also explicitly pointed to by Judge Easterbrook in Morphin, where he says specifically, the department had not set up facts supporting its view, but Justice Kennedy and Alito thought that unnecessary. And he cites to, I believe, Supreme Court reporter volume 135 at 2140. This has been well trodden ground when it comes to the level of factual specificity that needs to be provided to a visa applicant. And we believe we complied with the constitutional and administrative requirements. The fact that we might want to give more to a visa applicant under the fam should not be held to sort of attribute more to Mr. Lee's court's jurisprudence and Allen v. Milas, which was less than four years ago now. All of these standards get collapsed into the facially legitimate and bona fide standard. Counsel, is it correct that if the basis for the visa denial is that you are a member of a gang, that's essentially a lifetime bar against miscibility? That is not correct? That is not correct. The reason why I say that is because of precisely what your honor was pointing out within the fam. It says specifically that it's not a lifetime bar. It also allows... Unless you can get that determination reversed. But no, it's not just that. It says there's a specific subsection saying that this provision does not apply if there is no reason to believe the applicant will engage in lawful activity on trip. And there is a subsection where the applicant is allowed to put to the purpose of his or her trip and things of that nature to assure the consular officer of precisely your honor's point that this is not some sort of forever red A on their chest. Scarlet letter, sorry. But the point that I'm trying to make is we have given, I think this is a summary judgment case. This is not a normal Iqbal pleading problem like we had with Din. We have given at this point much more than we ever gave to the plaintiffs in Din. Much more than was given even in Cardenas. Because if you recall with Cardenas, there was an arrest. Totally agreed. There wasn't a specific arrest with probable cause necessarily towards Mr. Mora in that case, the husband plaintiff in that case. He was arrested because he was close to the border and he was located. He was arrested by ICE close to the Canadian border in Idaho. And he was in the company of members who are persons whose tattoos indicated that they might be members of the Sereno gang. Incidentally, I want to flag that within the foreign affairs manual, the Sereno gang is not even a gang that's listed. Now that's not to say that we don't care about the Sereno gang or anything that's far from it. The point I'm trying to make is that members of MS-13 have been on notice since at least 2005 that the Department of Homeland Security and the Department of State are very concerned about letting them in. I also want to flag that in El Salvador, MS-13 is labeled as a terrorist organization. It's not even just, oh, they're gangs and we don't like criminal activity in general. They have serious problems in El Salvador with MS-13 so much so that they are terrorists. I just want to make sure I understand your position. It is correct that the consular official cited 8 U.S.C. 1182A3A. The petitioner understood this was the basis for the denial. And it says, any alien who a consular officer or the attorney general knows or has reasonable ground to believe seeks to enter the United States to engage solely principally or incidentally in any other unlawful activity is inadmissible. I understand your position to be that with the citation of that statute, that was all that the consular official was required to disclose to the visa applicant as the basis for denial. Is that your position? Constitutionally, yes. And the reason why I say that is to go back precisely to where I started from my argument to answer Judge Lee's point, that if more were required, then how could Mazayan now still be the law as recently as 2020? Because no information at all was given, no statutory section, anything. So that's why I have to answer. Din says that the factual predicate has to be apparent from the statute itself, or in the absence of that, the factual predicate has to be apparent in the record. Are you saying that this statute, as I've quoted, provided the necessary factual predicate required by Din? Is that your position? Din is a statement of what the Constitution requires. You're referring to Justice Kennedy's concurrence. The Ninth Circuit is treated as the controlling opinion. Absolutely. I understand. I'm saying that if Your Honor's point in terms of pushing back on that, were that this subsection is truly problematic, then I don't believe that Cardenas would make any sense. Cardenas involved the exact same statutory subsection. The consular officer in that case dealt with an extremely similar factual pattern where the applicant was coming to the consular officer saying, don't worry about these tattoos. Pictures of tattoos were taken in this case. I'm not sure if pictures of tattoos were taken in that case, but they were certainly evaluated as to what their meanings were. And obviously there was a background arrest, but we don't need that. That's not me. And I think the core of what I'm trying to get at. All those facts that you talked about, Cardenas, those are facts in the record, which would meet the requirement of DEN, right? Well, they certainly meet the requirement of DEN, but I think that DEN itself specifically says... Well, those two cases are certainly overlapping and interrelating for the purposes of this case. I take Your Honor's point there. But what I'm trying to get at here is that there is a sufficiency and a necessary component here. What Justice Kennedy's concurrence, the core of his concurrence was, this is clearly sufficient. We know that pretty well because we had appealed from this court's jurisprudence to the complete opposite of that. But that does not mean that facts are always necessary. The reason why I say that is if you look at this court's decision from last year in Cachatrayan, it says specifically either a statutory citation or a facial connection to the statutory subsection. The reason why... And facial connection, by the way, is not necessarily always facts. It's facial connection. It's a reason to believe that links back to the statutory subsection that's at issue. So if Your Honor is not convinced by the statutory citation alone is enough in this case, we would submit that a facial connection to a known organized crime gang, and regardless of how long it took, there is no dispute that that gang in this case is MS-13. We would submit that that was given to plaintiffs in this case. They know that it's MS-13, and that is sufficient reason I say that has departed us. If there are no further questions, I see that I'm well over my time. I apologize for that. We would ask that you affirm. Thank you. Mr. Lee. So Your Honor, there's a number of points I would like to make. Number one, we've just heard from opposing counsel, all of a sudden we're talking about secret videos. We're talking about evidence that may or may not exist somewhere out there. My client is not a gang member. He's never been associated with MS-13 or any other gang, and there's no fact, like there were in Cardenas, that provide any connection. So if we're talking Soviet spies were mentioned, etc., there are other subsections of the statute for espionage and terrorism, but that's not what we're talking about here. Now, just to respond to Your Honor, Judge Lee's question on notice, I think that the colloquy has been revealing on it, but I would just add that under the expedited removal statute, that is at 8 U.S.C. 1225 C.1, it states that if an immigration officer, this is to make sure that hearings don't reveal national security information. It says, if an immigration officer or an immigration judge suspects that an arriving alien may be inadmissible under subparagraph A, other than clause two little I's, and then it goes on to say or B or C. Congress made an exception for any other unlawful activity. So you want to deem him inadmissible for being a Soviet spy, there's another subsection for that. But if I could just make a couple of concluding points, because this opposing counsel used the phrase extreme a number of times. The State Department's position here is very extreme. At page 33 of their answering brief, they state, even if there were no evidence in the record of Mr. Asencio Cordero's association with MS-13, the consular officer's citation satisfied the constitution. Now, I don't want to diverge into a number of hypotheticals. The political climate right now is wrought with a lot of discussion as to the difference between a conclusion and a fact. We ask respectfully that this court pay attention to that. Consider in the future, if there is a politician who says that all individuals from El Salvador are rapists, or that all individuals from El Salvador are gang members, that would pose problems from the standpoint of the constitution. And we would respectfully ask that this court, we're not asking for anything extreme. That's the State Department's argument. We ask that there be a fact on the record that provides a reason to believe why the individual is going to enter the United States to engage in any other unlawful activity. My client's been separated from his wife for seven years, from his U.S. citizen daughter for seven years, and he's not a gang member. We ask that this court remand so that the State Department has one last opportunity to provide any fact. So with that, I am glad to have had the chance to talk about this case, Your Honors, and thank you. Thank you. Thank you both for the helpful argument. The case has been submitted.
judges: SCHROEDER, Lipez, LEE